IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**FLORIDA AUTOMOBILE JOINT
UNDERWRITING ASSOCIATION,**

    Plaintiff,

vs.                                    Case No. 4:06cv546-WCS

**MILLIMAN, INC. (f/k/a MILLIMAN
& ROBERTSON, INC.) and
METROPOLITAN WEST
ASSET MANAGEMENT,**

    Defendants.

_____/

## ORDER ON DEFENDANT'S MOTION TO DISMISS, DOC. 47

Defendant Metropolitan West Asset Management has filed a motion to dismiss Counts I, II, and III of the complaint.  Doc. 47.  Plaintiff has responded.  Doc. 65.

Dismissal of a claim or counterclaim pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted should not be ordered unless it appears beyond doubt that Plaintiff can prove no set of facts in support of his claims which would entitle him to relief.  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); Harmon v. Berry, 776 F.2d 259, 260 (11th Cir. 1985) (counterclaim).  A court must "accept the factual allegations in the complaint as true and make all reasonable inferences in favor of the non-moving party."  Spanish

Broadcasting System of Fla., Inc. v. Clear Channel Communications, Inc., 376 F.3d 1065, 1070 (11th Cir. 2004).

> Federal Rule of Civil Procedure 8(a)(2) . . . provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Such a statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions.").

> If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding. Moreover, claims lacking merit may be dealt with through summary judgment under Rule 56.

122 S.Ct. at 998-999.

**Count I, Breach of Contract, WorldCom Bonds**

The amended complaint alleges that on February 1, 2001, Metropolitan West Asset Management (MetWest) was engaged as investment adviser to Plaintiff. Doc. 34, ¶ 23. The contract between Plaintiff and MetWest is attached as exhibit 4. *Id.*, ¶ 4.

The contract is doc. 36-3, pp. 1-12, on the electronic docket. The contract refers to MetWest as the "Manager." *Id.* The contract provided that MetWest had "authority and responsibility to invest certain of the FAJUA's assets in accordance with the guidelines and criteria set forth in the FAJUA's Investment Policy (Exhibit I to the RFP)."

Under the contract, Plaintiff appointed MetWest "as an investment manager with the power to invest and manage the Account Assets of the FAJUA pursuant to the terms of the RFP and the FAJUA's Investment Policy . . . ." Doc. 34-3, ¶ 4. That authority was "subject to the fiduciary standards set forth in this Agreement" and to be

"in accordance with the investment guidelines . . . as amended from time to time" by Plaintiff. *Id.* MetWest had power to buy or sell assets. *Id.*, ¶ 5.(a).

MetWest was obligated under the contract to:

1. "[A]ttempt to obtain the best net price and the most favorable execution of each purchase and sale transaction." *Id.*, ¶ 5.(a).

2. "[D]ischarge its duties, as investment manager and fiduciary, with respect to the Account Assets solely in the interests of FAJUA and (a) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in the like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; and (b) in accordance with the investment instructions as the FAJUA may furnish to the Manager in writing from time to time and with this Agreement." *Id.*, ¶ 7.

3. "[I]mmediately notify the FAJUA (i) if it fails to comply with or will for any reason be unable to comply with any term, condition or provision of this Agreement." *Id.*, ¶ 8.

The contract further provided:

> The objective of the Manager is to produce an optimal return on the Account Assets, consistent with the RFP and the FAJUA's Investment Policy. The Manager shall consistently and timely review the FAJUA's portfolio in relation to market conditions to ensure optimal realization of income from investments.

*Id.*, ¶ 9.

MetWest did not take over portfolio management until May, 2001, and shortly thereafter, MetWest sold $2 million of WorldCom bonds, A- grade, out of the $3 million

original investment. *Id.*, ¶ 25. The bonds had been acquired at 101.67, but dropped to 96.314 by March 31, 2002, and dropped to 80.00 by April, 2002, when the bonds were down-graded to BBB. *Id.* Plaintiff further alleges that rather than liquidating and stopping losses, MetWest invested $290,625 to buy more WorldCom bonds worth $500,000 at par value; this was a discount of 58.130. *Id.*, ¶ 26. It is alleged that these bonds were "below grade upon acquisition." *Id.* In May, 2002, the bonds rallied, and $81,875 had been gained. *Id.*, ¶ 27. As a result, at the end of May, 2002, the total WorldCom bond loss had been reduced to $49,825. *Id.* It is then alleged that there was a "rapidly deteriorating situation" over the next 30 days, and rather than take a $50,000 loss, MetWest "bet the farm on the whole $1.3 million – and lost." *Id.*, ¶ 28. By the end of June, 2002, the WorldCom investment had lost $1,014,825. *Id.* It is alleged that Defendants did not advise Plaintiff of these losses until July, 2002, when "there was little or no opportunity to mitigate the losses or really do anything." *Id.*, ¶ 29. Plaintiff then alleges:

> As a result of violations of FAJUA's Investment Policy and the investment of portfolio funds in speculative and unsuitable assets, FAJUA sustained losses totaling $1,596,444.51.

*Id.*, ¶ 45.

Defendant argues that the only "investment policies" implicated by these allegations are that (1) MetWest should have sold all of WorldCom bonds when those bonds were downgraded to BBB in April, 2002; (2) MetWest should not have invested another $290,625 to acquire more WorldCom bonds in May, 2002, when the bonds were "below grade;" and (3) MetWest should have predicated the collapse of WorldCom

that occurred in June, 2002, and sold all of the bonds in May, 2002, when the bonds had regained $81,875.  Doc. 47, p. 3.

Plaintiff contends that the motion to dismiss raises factual disputes as to "the meaning of an Investment Policy."  Doc. 65, ¶ 2.  Plaintiff states that the court is not responsible for reviewing 69 pages of text and exhibits to determine "the meaning of duties and obligations of MetWest."  *Id.*, ¶ 9.  Plaintiff reasons that:

> If Defendant MetWest engaged in speculation in WorldCom bonds in a manner not contemplated under the contract or in violation of a duty owed to Plaintiff FAJUA under the contract, then MetWest was in breach of the contract.

*Id.*, ¶ 12.

State law governs the breach of contract claim.  "In contract actions, the complaint must allege the execution of the contract, the obligation assumed thereby, and the breach."  Breakers of Fort Walton Beach Condominiums, Inc. v. Atlantic Beach Management, Inc., 552 So.2d 274, 276 (Fla. 1st DCA 1989), citing Industrial Medicine Publishing Co. v. Colonial Press of Miami, Inc., 181 So. 2d 19, 20 (Fla. 3d DCA 1965).  "To state a cause of action for breach of contract, a Plaintiff is required to allege facts that, if taken as true, demonstrate that the parties mutually assented to 'a certain and definite proposition' and left no essential terms open."  Plumbing Service Co. v. Progressive Plumbing, Inc., 2007 WL 935073, *2 (Fla. 5th DCA, Mar. 30, 2007), quoting W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc., 728 So.2d 297 (Fla. 1st DCA 1999).

Defendant has identified specific investment standards that MetWest acknowledges, at least for this motion, were contractually binding during the relevant

period.[1]  Under the heading "Acceptable Portfolio Investments" was the restriction that "U.S. Corporate bonds or notes" have a rating of BBB or better, "provided that no investments be made which will cause the overall portfolio quality rating to be below AA."  Doc. 34-2 (exhibit 2), p. 15.  The total portfolio was limited to no more than 50% of such bonds.  *Id.*  Further, it was policy that bonds rated below BBB "may comprise up to 10% of the portfolio, provided that no investment be made that will cause the overall portfolio quality rating to be below AA."  *Id.*

Plaintiff has not alleged a breach of contract as to these contractual specifics.  Indeed, it does not even appear that Plaintiff intended to allege a breach of contract as to these specifics.  There is no allegation that the portfolio had more than 50% of such bonds at any moment due to the WorldCom bonds, or that bonds rated below BBB comprised more than 10% at any moment due to the WorldCom bonds.  If Plaintiff intended to state a breach of contract claim as to these specifics, it should be dismissed.

The contract also provided that MetWest had a fiduciary duty to Plaintiff "to obtain the best net price and the most favorable execution of each purchase and sale transaction," to discharge its fiduciary duties with prudence, to "produce an optimal return," and to "consistently and timely review the FAJUA's portfolio in relation to market conditions to ensure optimal realization of income from investments."  Doc. 34-3, ¶¶

---

[1] The documents attached to the complaint appear to have been generated at different times, many are not signed, and how the whole constitutes an enforceable contract has not been explained in the complaint.  It will be assumed for this motion that the investment restrictions identified by MetWest in its motion to dismiss were binding upon MetWest in the period April through June, 2002.

5.(a), 7, 8, and 9. The "bright line" investment restrictions discussed above do not replace the general fiduciary duties set forth in paragraphs 5.(a), 7, 8, and 9. Stated another way, while it was permissible under the contract to hold grade BBB bonds and buy lesser grade bonds so long as the portfolio percentages were observed, it may not have been reasonably prudent as a fiduciary to continue to buy or hold WorldCom bonds. Plaintiff alleges that the bonds were downgraded to BBB in April, 2002, were again downgraded in May, 2002, falling to about 60% of the original value. It is alleged that the value of the bonds significantly deteriorated in June, 2002. Construing the implications most favorably for Plaintiff, it can be imagined that somewhere during this plunge in value a reasonable fiduciary might have done something to stop the loss. The motion to dismiss Count I is granted as to the specific investment policies argued by Defendant, but is otherwise denied.

**Counts II and III, breach of fiduciary duty and negligence, WorldCom bonds**

MetWest contends that since the contract was not breached in the particulars discussed above, there cannot be any breach of a fiduciary duty or a duty to exercise reasonable care (negligence). The theory is that the contract has set the duty of care, overriding tort law. The premise is flawed. The contract imposes a broad fiduciary duty and a duty of reasonable care. This aspect of the motion to dismiss is denied.

**The economic loss rule and Count II, breach of a fiduciary duty**

District Judge Mickle conducted a thorough review of the cases and concluded that under Florida law, the economic loss rule does not apply to Plaintiff's claims of breach of a fiduciary duty or negligence. Doc. 22. MetWest argues that the court did not consider Indemnity Ins. Co. of North America v. American Aviation, Inc., 891 So.2d 532 (Fla. 2004).

> In American Aviation, the Florida Supreme Court explained:
>
> The prohibition against tort actions to recover solely economic damages for those in contractual privity *is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract* by bringing an action for economic loss in tort. . . . Underlying this rule is the assumption that the parties to a contract have allocated the economic risks of nonperformance through the bargaining process. A party to a contract who attempts to *circumvent the contractual agreement* by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made. Thus, when the parties are in privity, contract principles are *generally* more appropriate for determining remedies for consequential damages that the parties *have, or could have, addressed through their contractual agreement*. Accordingly, courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract.

891 So. 2d at 536-537 (emphasis added). The court favorably cited Weimar v. Yacht Club Point Estates, Inc., 223 So. 2d 100, 103 (Fla. 4th DCA 1969), quoting the following from that case: "[N]o cause of action in tort can arise from a breach of a duty existing by virtue of contract." 891 So. 2d at 537. The court repeated that "when the parties have negotiated remedies for nonperformance pursuant to a contract, one party may not seek to obtain a better bargain than it made by turning a breach of contract into a tort for economic loss." *Id.*, at 543.

The court said, however, that even where there is a contract, an exception is made where there is an allegation of "neglect in providing professional services." 891 So. 2d at 537, citing Moransais v. Heathman, 744 So. 2d 973 (Fla. 1999). The court also noted with apparent approval (or, at least, without disapproval) one of the cases relied upon by Judge Mickle in his order denying the earlier motion to dismiss:

> Although we limited our holding in *Moransais* to situations involving professional malpractice, *we note that some courts have extended the exception to the application of the economic loss rule created in Moransais to causes of action for breach of fiduciary duty, even if there was an underlying oral or written contract.* See *Invo Fla., Inc. v. Somerset Venturer, Inc.*, 751 So.2d 1263, 1266 (Fla. 3d DCA 2000); *Performance Paint Yacht Refinishing, Inc. v. Haines*, 190 F.R.D. 699, 701 (S.D. Fla. 1999).

891 So. 2d at 542 (emphasis added). When the court listed the exceptions that it itself had recognized, it did not mention breach of a fiduciary duty, but that is because the exception was recognized by the Third District Court of Appeal, not by the Florida Supreme Court. *Id.*, at 543 and ns. 4-7.

Justice Cantero's concurring opinion, in which Justice Wells concurred, strongly suggests the economic loss rule should not apply if the predominate purpose of the contract is to render services. *Id.*, at 545-546. He also noted that the "duty" requirement for a tort claim "remains a strong filter in these cases" where the economic loss rule does not apply. *Id.*, at 546.

> A service provider's mere failure to exercise reasonable care in performing a service contract does not render it liable in tort to every party who loses revenue or incurs additional expense. The plaintiff still must demonstrate an independent duty to protect that plaintiff's purely economic interests.

*Id.*, at 546.  Justice Cantero reasoned that a fiduciary duty is "an independent duty to protect the plaintiff's purely economic interests," noting:

> Courts have considered allowing recovery from service providers for purely economic loss where a special or fiduciary relationship exists.  *See, e.g., Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601 (7th Cir. 2001) (applying Illinois law) (concluding that a bank's handling of its customers' transactions might create independent tort duties); *Choi v. Chase Manhattan Mortgage Co.*, 63 F.Supp.2d 874, 884 (N.D. Ill. 1999) (holding that independent tort duties might exist "where one party, due to a close relationship, relies heavily on the judgment of another").

*Id.*, at 547.

Were I to be entirely guided by American Aviation, I would deny this motion to dismiss.  Both the majority opinion and Justice Cantero's concurrence in American Aviation look favorably upon the "breach of a fiduciary duty" exception, implicitly treating it much the same as the "professional services" exception.

However, there are troubling cases cited by Defendant.  Relying upon American Aviation, the Eleventh Circuit recently ruled that tort claims (breach of a fiduciary duty, negligence, and others) were barred by Florida's economic loss rule.  Royal Surplus Ins. Co. v. Coachman Industries, Inc., 184 Fed.Appx. 894, *8 (11th Cir. Jun. 19, 2006) (not selected for publication).  In that case,  the parties were in a contractual relationship (an insurance contract),  the claims were based upon "the same information that provided the basis for the breach of contract claim," and the obligations of the parties "arose from the insurance contracts."  *Id*.

Likewise, in Granat v. Axa Equitable Life Ins. Co., No. 06-21197-CIV, 2006 WL 3826785 (S.D. Fla.  Dec. 27, 2006), another insurance contract case, the court held that a claim of breach of a fiduciary duty was barred by the Florida economic loss rule.  *Id*.,

at *3. The court commented that the economic loss rule would not bar a tort claim "extraneous to the breach of contract." *Id.* The court noted that there was no claim that the defendant "was a professional or engaged in the rendering of professional services," and therefore it found that the exception created by Moransais did not apply. *Id.*, at *5. The court found that plaintiffs' "claim for breach of fiduciary duty is based upon and inextricably intertwined with their claim for breach of contract." *Id.* The court noted Invo. Fla., Inc. v. Somerset Venturer, Inc., 751 So. 2d 1263, 1266 (Fla. 3d DCA 2000), and found that case unpersuasive in light of the Florida Supreme Court's later decision, American Aviation. *Id.*

The ruling in Invo. Fla. was followed by the Third District Court of Appeal in Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc., 842 So.2d 204, 209 (Fla. 3d DCA 2003), *rev. denied*, 939 So.2d 1061 (Fla. 2006) (table). Both Invo. Fla. and Susan Fixel, Inc. were relied upon by Judge Mickle. Doc. 22, p. 5.

There is also contrary Florida precedent that should be discussed. Detwiler v. Bank of Central Florida, 736 So. 2d 757 (Fla. 5th DCA 1999) held that where there is a contract, a claim for breach of fiduciary duty is precluded by the economic loss rule. Detwiler was decided on July 2, 1999, one day after Moransais was decided, and did not discuss that opinion. Thus, it is not as reliable as the more recent cases from the Third District Court of Appeal. There is also the contrary opinion from the Third District Court of Appeal, Clayton v. State Farm Mut. Auto. Ins. Co., 729 So. 2d 1012 (Fla. 3d DCA 1999), but that case was decided on April 14, 1999, six weeks before the

Moransais decision. As a consequence, Clayton appears to have been implicitly abrogated by Invo. Fla. and Susan Fixel, Inc.

Finally, there is the decision of Senior District Judge Paul, a decision which preceded the Florida Supreme Court's ruling in American Aviation. Hilliard v. Black, 125 F.Supp.2d 1071, 1079 (N.D. Fla. 2000). With similar facts, Judge Paul faced exactly the same question, whether to adhere to contrary Eleventh Circuit precedent. He ruled:

> If the state's highest court does not provide any guidance, federal courts are "bound to adhere to the decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir. 1983); *Liberty Mutual Ins. Co. v. Electronic Systems, Inc.*, 813 F.Supp. 802, 805 (S.D. Fla. 1993).

125 F.Supp.2d at 1079. *See also* Media Services Group, Inc. v. Bay Cities Communications, Inc., 237 F.3d 1326, 1329 n.5 (11th Cir. 2001) ("in the absence of controlling state precedent, we are bound by the decisions of intermediate state courts unless there is some persuasive indication that the state's highest court would decide the issue differently"). Relying upon Moransais, Judge Paul found "No 'persuasive indication' is present that the Florida Supreme Court would disagree with the Third District Court of Appeals." *Id.*

The rulings by Judges Paul and Mickle are more persuasive. American Aviation provides even stronger reason to believe that the Florida Supreme Court will not disagree with the decisions of the Third District Court of Appeals. Royal Surplus Ins.

Co. and Granat are less persuasive.[2]  For these reasons, this aspect of the motion to dismiss is denied.

Accordingly, it is **ORDERED** that Defendant MetWest's motion to dismiss is **GRANTED** in part.  To the extent that Count I claims breach of contract for permitting the overall portfolio quality rating to be below AA, portfolio to drop below an overall quality rating AA, to be comprised of more than 50% of corporate bonds have a rating of BBB or better, or to be comprised of more than 10% of corporate bonds rated below BBB, the complaint is **DISMISSED**, but in all other respects the motion is **DENIED**.

**DONE AND ORDERED** on May 3, 2007.

s/   William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[2] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  ELEVENTH CIR. R. 36-2.

Case No. 4:06cv546-WCS